UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JANIS SCHMIDT, | ) | Civ.  05-5036-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION |
| LOUISE BIG BOY, | ) | FOR SUMMARY JUDGMENT |
| ROBERT MONTILEAUX, | ) | |
| LANCE RUSSELL, | ) | |
| JAMES DAGGETT, and | ) | |
| JEFF TARRELL, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Janis Schmidt, filed a complaint against Fall River and

Shannon County State's Attorney Lance Russell, Shannon County Sheriff

James Daggett, Fall River County Sheriff Jeffrey Tarrell (hereinafter collectively

referred to as defendants), and others, alleging violations of her constitutional

rights arising from her eviction from land located on the Pine Ridge Indian

Reservation.  The pro se complaint presents multiple federal and state-law

causes of action against defendants.  Defendants move for summary

judgment.  Schmidt opposes the motion.

## BACKGROUND

The evidence,[1] viewed in the light most favorable to the nonmoving

party, Schmidt, is:

On May 14, 2004, Oglala Sioux Tribe Associate Judge Lisa F. Cook

ordered Schmidt to leave real property located within the borders of the Pine

Ridge Indian Reservation.  In the order, Judge Cook found Schmidt was a non-

Indian who voluntarily consented to enter into a verbal landlord-tenant

agreement with Louise Big Boy that allowed Schmidt to stay on Big Boy's land

free of charge.  Schmidt refused to leave the property.  On June 1, 2004,

Judge Cook issued a second order authorizing Schmidt's immediate removal

from the property.  The second order instructed the Oglala Sioux Tribe

Department of Public Safety (OSTDPS) to "eject" Schmidt, a trespasser, and

---

[1]This court's local rules, D.S.D. LR 56.1(B), provides, "there shall be
annexed to the [summary judgment] motion a separate, short, and concise
statement of the material facts as to which the moving party contends there is
no genuine issue to be tried."  D.S.D. LR 56.1(C) requires that "[t]he papers
opposing a motion for summary judgment shall include a separate, short, and
concise statement of the material facts as to which it is contended [by the
opposing party] that there exists a genuine issue to be tried.  The opposition
shall respond to each numbered paragraph in the moving party's statement
with a separately numbered response and appropriate citations to the record."
Schmidt's opposition to defendants' motion did not comply with this rule.
Thus, pursuant to D.S.D. LR 56.1(D), because defendants' material facts were
not controverted by the statement Schmidt was required to file, "[a]ll material
facts set forth in the statement required to be served by [defendants] will be
deemed to be admitted."

turn her over to the United States Marshal, sheriff, or other officer of the state of South Dakota or Nebraska.

That same day, Sheriff Daggett received a call requesting assistance with an eviction.  Sheriff Daggett made two trips to Schmidt's residence, but Schmidt either was not home or refused to answer the door.  OSTDPS Officer Peter Plenty Bull later arrested Schmidt for trespassing.  Sheriff Daggett did not participate in Schmidt's arrest.  Pursuant to Judge Cook's order, Schmidt was to be transferred to state custody.  Sheriff Daggett and Russell discussed the matter, and a decision was made to accept custody of Schmidt.  Before Sheriff Daggett took custody of Schmidt, he talked to Judge Cook, who provided him with a copy of the order requiring Schmidt's immediate removal from the property and informed him that Schmidt had been served with an order to vacate but refused to leave the premises.  Upon taking custody of Schmidt, Sheriff Daggett provided Schmidt with a copy of the order.

Pursuant to standard practice and policy, Sheriff Daggett restrained Schmidt with handcuffs and a seatbelt while transporting her to the Fall River County jail in Hot Springs, which is the appropriate facility for incarcerating non-Indians transferred to state custody.  Schmidt did not request the handcuffs be loosened, indicate they were applied incorrectly, or complain

about any pain they caused.  Schmidt also did not complaint about the

seatbelt strap being too tight or causing her discomfort.

When they arrived in Hot Springs, Sheriff Daggett transferred custody of

Schmidt to the Fall River County jail and had no further involvement in

Schmidt's incarceration.  Schmidt was booked into the jail at 10:20 p.m. on

June 1, 2004.  In his capacity as Fall River County Sheriff, Tarrell manages

the operations of that jail.  Sheriff Tarrell was not involved in the booking

process and was not present when Schmidt was booked in.  Sheriff Tarrell had

no knowledge about Schmidt or the property dispute before she arrived at the

jail, was not part of the decision to arrest Schmidt, and was not involved in

her arrest.  Schmidt remained at the jail until her release at 1 p.m. on June 3,

2004.  Schmidt was ordered to appear before a magistrate on June 9, 2004.

In his role as Shannon and Fall River County State's Attorney, Russell decided

not to pursue criminal charges.  Russell was not involved in Schmidt's arrest

or incarceration.

Judge Cook later allowed Schmidt to retrieve personal property from the

disputed land.  In the weeks after Schmidt's arrest and incarceration, Sheriff

Daggett made numerous trips to the property to assist Schmidt in recovering

her personal property and belongings.  Sue Ganje, auditor for Fall River and

Shannon Counties, has not found any record of a notice of a claim filed by

4

Schmidt with regard to injuries Schmidt allegedly suffered at the hands of defendants.

Schmidt filed this lawsuit against defendants and numerous other parties, alleging violations of her constitutional rights during her arrest, detention, and confinement; conspiracy to violate her constitutional rights; malicious prosecution; and possibly state-law claims for false imprisonment and improper incarceration. (Docket 10–amended complaint). The court previously granted motions to dismiss several other defendants. Defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, the court views the evidence presented based upon which party has the burden of proof under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## DISCUSSION

**I.     Rule 56(f) Affidavit**

Schmidt responds to defendants' motion by filing an Affidavit in Opposition to Defendants' Motion for Summary Judgment.  (Docket 170). Although Schmidt does not explicitly request that she be permitted to conduct discovery before responding to defendants' motion, she submitted this "Affidavit" pursuant to Fed. R. Civ. P. 56(f), which permits the court to refuse summary judgment or order a continuance to allow discovery when "it appear[s] from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition."  Schmidt claims "[i]t is absurd that the defendants apply for summary judgment when they have not engaged in any meaningful answers to questions" regarding her arrest and incarceration.  (Docket 170 at

6

2).  Schmidt asserts that she cannot respond to the motion for summary judgment because defendants have withheld documents.  Schmidt then recites verbatim numerous paragraphs from her purported amended complaint,[2] claiming defendants refuse to rebut her allegations.

For public officials, qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985), including "the burdens of broad-reaching discovery" requests.  Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  But "Rule 56(f) allows a party opposing summary judgment to seek a continuance and postpone a summary judgment decision until adequate discovery has been completed." Dulany v. Carnahan, 132 F.3d 1234, 1238 (8th Cir. 1997).  "When seeking such a continuance, the party opposing summary judgment must file an affidavit with the trial court to show what specific facts further discovery might unveil." Id.  The Eighth Circuit has explained,

> Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.  A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as

---

[2]As noted in a previous order (Docket 178), Schmidt's purported amended complaint (Docket 155), has been stricken from the record in this case.  The amended complaint filed on September 7, 2005 (Docket 10), remains the active amended complaint in this case.

7

> otherwise required by Rule 56(e) and how postponement of a
> ruling on the motion will enable him, by discovery or other means,
> to rebut the movant's showing of the absence of a genuine issue of
> fact.  Where, as here, a party fails to carry his burden under Rule
> 56(f), postponement of a ruling on a motion for summary
> judgment is unjustified.

Willmar Poultry Co. v. Morton-Norwich Prods., Inc., 520 F.2d 289, 297 (8th

Cir. 1975).  The Eleventh Circuit has opined that, in cases involving qualified

immunity, "Rule 56(f) balancing is done with a thumb on the side of the scale

weighing against discovery."  Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1280

(11th Cir. 1998).

Even assuming that Schmidt's Affidavit in Opposition to Defendants'

Motion for Summary Judgment qualifies as an affidavit pursuant to Rule 56(f),

this affidavit fails to meet the requirements of that rule.  Schmidt has not

provided the reason she is unable to respond to the summary judgment

motion.  She does not explain what specific facts discovery might reveal.  She

does not inform the court how postponing a ruling on summary judgment will

allow her to rebut defendants' showing of the absence of a genuine issue of

material fact.  Defendants' motion for summary judgment is based on various

immunities, included qualified immunity, which is afforded public servants in

cases like this one.  The court already has denied motions to compel

production of the documents Schmidt claims have been withheld.  (Docket

123, 148).  Because one purpose of qualified immunity "is to protect public

8

officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,' " Anderson v. Creighton, 483 U.S. 635, 646-47 n.6, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (quoting Harlow, 457 U.S. at 817), and Schmidt has not met her burden to show postponing a ruling on summary judgment is justified, the court denies Schmidt's request to conduct discovery and to postpone the ruling on summary judgment.

## II.    Summary Judgment

### A.    Official Capacity Claims

Schmidt sued defendants without stating whether they were sued in their individual capacities.  In her amended complaint, however, Schmidt lists defendant Judge Cook as a party in both her individual and official capacities, indicating Schmidt understands the distinction between the two capacities. (Docket 10 ¶ 5).  In a suit against a public official, if the complaint does not specifically name the defendant in his or her individual capacity, the court presumes that the defendant is being sued in his or her official capacity.  Artis v. Francis Howell N. Band Booster Ass'n, 161 F.3d 1178, 1182 (8th Cir. 1998). Because the amended complaint does not so specify, the court will presume defendants are sued in their official capacities.  "Suits against public employees in their official capacity are the legal equivalent of suits against the governmental entity itself."  Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th

Cir. 2004).  Thus, the court must treat Schmidt's claims as if presented against the counties for which defendants work, Fall River and Shannon counties.

"A claim against a county is sustainable only where a constitutional violation has been committed pursuant to an official custom, policy, or practice."  Johnson v. Blaukat, 453 F.3d 1108, 1114 (8th Cir. 2006) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).  "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy."  Jane Doe A v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645 (8th Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).  Alternatively, "custom or usage" is shown by:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

Id. at 646 (citation omitted).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words, a municipality cannot be

held liable under § 1983 on a *respondeat superior* theory." <u>Monell</u>, 436 U.S. at 691.

Due to Schmidt's failure to respond properly to the motion for summary judgment, the court is left without citation to any evidence that might support a claim against Fall River and Shannon counties. As more fully explained below, the record does not show that any of the defendants committed a constitutional violation; thus, the respective counties cannot be held liable under § 1983. See <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 603 (8th Cir. 2003) (quoting <u>Monell</u>, 436 U.S. at 691) (concluding that municipality cannot be held liable under § 1983 in absence of constitutional tort). Furthermore, even assuming a constitutional violation occurred at the hands of any of the defendants, the record is devoid of evidence that there existed a pattern of unconstitutional conduct by any of the defendants, that either of the counties' officials received notice of and were deliberately indifferent to or tacitly authorized the unconstitutional conduct, or that any county custom was the moving force behind an alleged constitutional violation. See <u>Jane Doe A</u>, 901 F.2d at 646. Accordingly, summary judgment is proper as to the claims against defendants in their official capacities.

11

**B.     Individual Capacity Claims**[3]

Defendants claim they are entitled to absolute or qualified immunity

from Schmidt's claims.  As explained below, defendants are correct.

**1.     Prosecutorial Immunity**

Russell seeks prosecutorial immunity on the claims against him.

"Prosecutors may be entitled to either absolute or qualified immunity from civil

liability under 42 U.S.C. § 1983 for actions undertaken pursuant to their

official duties.  If the prosecutor is acting as advocate for the state in a

criminal prosecution, then the prosecutor is entitled to absolute immunity."

Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996).  Absolute

immunity applies to "prosecutorial functions such as the initiation and

pursuit of a criminal prosecution, the presentation of the state's case at trial,

and other conduct that is intimately associated with the judicial process."  Id.

In other words, "acts undertaken by a prosecutor in preparing for the

initiation of judicial proceedings or for trial, and which occur in the course of

his role as an advocate for the State, are entitled to the protections of absolute

immunity."  Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 125

L. Ed. 2d 209 (1993).  The Supreme Court has opined that "the essence of

_____

[3]As noted above, the court concludes Schmidt sued defendants in their
official capacities only.  Regardless, the court will address the potential claims
against defendants in their individual capacities for the sake of completeness.

absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." <u>Mitchell</u>, 472 U.S. at 525.  A prosecutor only receives qualified immunity, however, rather than absolute immunity, when he acts in an "investigatory" or "administrative" capacity.  <u>Brodnicki</u>, 75 F.3d at 1266.  To determine which immunity applies, "the Supreme Court has adopted a functional approach that looks to 'the nature of the function performed, not the identity of the actor who performed it.' " <u>Id.</u> (quoting <u>Forrester v. White</u>, 484 U.S. 219, 229, 108 S. Ct. 538, 545, 98 L. Ed. 2d 555 (1988)).

The entirety of Russell's actions in this case, as alleged in Schmidt's complaint, consist of the following: (1) Russell "had knowledge that [Schmidt] was living on deeded land, yet Sheriff Tarrell told Ms. Schmidt it was Lance Russell . . . [who] ordered her incarcerated" (Docket 10 ¶ 12); (2) Schmidt talked to Russell about her eviction from the property, and Russell "said this wasn't his jurisdiction" (<u>Id.</u> ¶ 43); (3) Schmidt called Russell to ask about her incarceration, but he refused to talk to her (<u>Id.</u> ¶ 121); and (4) Sheriff Daggett told Schmidt that answers to some "questions lay with Attorney General Lance Russell" (<u>Id.</u> ¶ 168).  The only evidence presented on this issue is Russell's affidavit, which states that he has no recollection of discussing Schmidt's land dispute with her or informing her he had no jurisdiction over it, he discussed

13

with Sheriff Daggett whether to accept custody of Schmidt after her arrest by tribal authorities, he had no involvement in her arrest or incarceration, and he decided not to pursue criminal charges against Schmidt.  (Docket 162 ¶¶ 2-6). Schmidt's causes of action against Russell state that he, along with other defendants and acting under color of law, deprived Schmidt of constitutional rights during her detention and confinement.  (Docket 10 ¶¶ 173-204).

The court concludes Russell is entitled to absolute prosecutorial immunity.  The only evidence before the court regarding Russell indicates his involvement in this matter was as a prosecutor.  Russell agreed to accept jurisdiction over Schmidt, a non-Indian, after her arrest by tribal authorities for trespassing.  After reviewing the case, Russell decided not to prosecute her. "The decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and absolute immunity thus attaches to those decisions." Brodnicki, 75 F.3d at 1268.  The actions Russell took are the essence of prosecution.  Based on the evidence presented, Russell is entitled to absolute prosecutorial immunity.

### 2.    Quasi-Judicial Immunity

Sheriff Daggett argues he is entitled to quasi-judicial immunity.  The Eighth Circuit has extended quasi-judicial immunity "to police and other court officers for purely ministerial acts where they do nothing other than perform

14

orders issuing from a court." <u>Penn v. United States</u>, 335 F.3d 786, 789 (8th Cir. 2003) (quoting <u>Duba v. McIntyre</u>, 501 F.2d 590, 592 (8th Cir. 1974) (per curiam)). Although qualified immunity presumptively is sufficient to protect state officials other than judges, absolute immunity applies "to other officials for acts taken pursuant to a facially valid court order." <u>Id.</u>

Sheriff Daggett's involvement in the instant case is similar to that of a state police officer in <u>Penn</u>. There, a tribal court, pursuant to a petition for a restraining order, issued an order commanding "any Police Officer" to "execute the Order of this Court and escort Margaret Penn from the Standing Rock Sioux Indian reservation boundaries." <u>Id.</u> at 788 (quoting tribal order). A Bureau of Indian Affairs (BIA) captain consulted with a BIA superintendent and a district commander regarding the legality of the order, and both advised the BIA captain to serve the order. <u>Id.</u> The BIA captain requested the assistance of the county sheriff, who agreed to accompany the BIA captain to serve the order. <u>Id.</u> The sheriff noticed a mistake in the order, however, and informed the tribal judge that Penn earlier had given to the sheriff the pistol that was mentioned in the petition for the restraining order. <u>Id.</u> The tribal judge ordered the two to serve Penn notwithstanding the error. The two served Penn with the order and escorted her to her home to pack some belongings. <u>Id.</u> The BIA captain advised Penn that she was subject to arrest if she

15

returned to her home, then he and the sheriff followed Penn as she drove to the reservation boundary.  Id.

The Eighth Circuit ruled the order in Penn was "facially valid" because it was signed by the tribal judge and was not issued in a clear absence of jurisdiction.  Id. at 789.  Although the sheriff knew the order was based partly on a mistaken assertion that Penn possessed a pistol, the Eighth Circuit ruled that, considering the face of the order and the tribal judge's verbal reaffirmation of the order, it was not apparent that the judge "was acting in a clear absence of jurisdiction."  Id. at 790.  The court opined, "[a] police officer charged with service of a facially valid court order is entitled to carry out that order without exposure to a suit for damages."  Id. at 789.  The court further noted that "to subject police officers to suit for serving or executing a facially valid court order that is later held to be unlawful would require them to 'act as pseudo-appellate courts.' "  Id. at 789 (quoting Valdez v. City & County of Denver, 878 F.2d 1285, 1289 (10th Cir. 1989)).

Sheriff Daggett's involvement in this case arose from the execution of Judge Cook's order, which was directed at a non-tribal member, Schmidt. Although "[a] tribe's civil jurisdiction over nonmembers is limited," it "is broadest with respect to nonmembers who voluntarily involve themselves with tribal activities."  Id.  Schmidt voluntarily lived on the reservation, was

16

employed by Oglala Lakota College, sold home-made goods to tribal members for profit, claims to be a civil rights leader for tribal members, and also appears to claim various personal and professional ties to tribal members. These activities indicate a voluntary involvement with tribal activities, see id. (citing examples of activities indicating voluntary involvement in tribal activities), extending Judge Cook's jurisdiction to its broadest point and solidifying Sheriff Daggett's apparent reliance on the facial validity of the order.

Sheriff Daggett, like the sheriff in Penn, was not involved in an arrest but, unlike the sheriff in Penn, Sheriff Daggett actually took physical custody of Schmidt after her arrest by tribal authorities.  Before he did so, he spoke with Judge Cook, who provided Sheriff Daggett with a copy of the order requiring Schmidt's removal.  Upon taking custody of Schmidt, Sheriff Daggett provided her with a copy of the order.  Sheriff Daggett transported Schmidt to the Fall River County jail.  When they arrived in Hot Springs, Sheriff Daggett transferred physical custody of Schmidt to the jail, and had no further involvement in her incarceration.  Sheriff Daggett later accompanied Schmidt on several trips to the property to assist in recovering her personal property. The record before the court indicates Sheriff Daggett was involved in executing a facially valid order, which was not later shown to be invalid.  Under Penn,

17

Sheriff Daggett was entitled to carry out Judge Cook's order without exposure to a lawsuit.  Id. at 789.  Sheriff Daggett is entitled to absolute quasi-judicial immunity.

### 3.    Respondeat Superior

Sheriff Tarrell argues he cannot be held individually liable because the amended complaint contains no factual allegations regarding his personal involvement in any conduct that allegedly violated Schmidt's constitutional rights.  The only factual allegation about Sheriff Tarrell in the amended complaint states that he told Schmidt the procedures to follow to obtain her day entries, but did not provide the log at that time.  (Docket 10 ¶ 168).  The only other mention of Sheriff Tarrell states that he and the other defendants "breached their duty by incarcerating Plaintiff without any evidence of wrongdoing."  (Id. ¶ 204).

The Eighth Circuit has observed that § 1983 claims cannot be brought under a respondeat superior theory.  Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).  "In particular," the court observed, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability."  Id. (citation omitted).  Schmidt makes no claim and presents no evidence of Sheriff Tarrell's personal involvement in conduct that infringed upon her rights.  Nor does Schmidt

make any claim or present evidence that her claim arises out of Sheriff Tarrell's improper training or supervision of jail employees.  Furthermore, because prison wardens and jailers are "absolutely immune from damages flowing from the fact of a prisoner's incarceration, when that incarceration occurs pursuant to a facially valid order of confinement," Figg v. Russell, 433 F.3d 593, 599 (8th Cir. 2006) (citation omitted), and the undisputed facts show the tribal court order for Schmidt's arrest was facially valid, all claims against Sheriff Tarrell resulting from Schmidt's incarceration must be dismissed.

### 4.    Qualified Immunity

Defendants argue that, even if the court determines that the claims against them cannot be dismissed based on absolute and quasi-judicial immunity (for Sheriff Daggett and Russell) or lack of personal involvement (by Sheriff Tarrell), dismissal of all claims against them is proper based upon the doctrine of qualified immunity.  "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (citation omitted). The doctrine serves as "an entitlement not to stand trial or face other burdens of litigation . . . ." Mitchell, 472 U.S. at 526, 105 S. Ct. 2806, 86 L. Ed. 2d

411.  "To withstand the application of qualified immunity, a plaintiff must

assert a violation of a constitutional or statutory right; that right must have

been clearly established at the time of the violation; and, given the facts most

favorable to the plaintiff, there must be no genuine issues of material fact as to

whether a reasonable official would have known that the alleged action indeed

violated that right."  Liebe, 157 F.3d at 577.

### a.    Arrest and Excessive Force

Defendants state that Schmidt's primary allegation against them is that

her arrest violated her Fourth Amendment rights, which forbid unreasonable

seizures.  None of the defendants were involved in Schmidt's arrest.  Thus,

defendants contend, none of them can be held liable for allegedly violating

Schmidt's constitutional rights during her arrest.

Under the qualified immunity test, Schmidt first must establish the

violation of a constitutional right.  Taken in the light most favorable to

Schmidt, the facts do not show defendants were involved in Schmidt's arrest

or any alleged constitutional violation that occurred as a result of the arrest.

Because the facts alleged by Schmidt do not show defendants were involved in

her arrest, they cannot be held liable for the alleged violation stemming

therefrom.  See, e.g., Ripson v. Alles, 21 F.3d 805, 808-09 (8th Cir. 1994)

(concluding police officer was entitled to summary judgment because he "was

not personally or directly involved in the alleged constitutional violation against [plaintiff]"); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985) (ruling plaintiff's claims were not cognizable under § 1983 because he had not shown defendant's personal involvement in or direct responsibility for incidents that injured him).

Even assuming that Sheriff Daggett was an active participant in Schmidt's arrest, defendants assert, Sheriff Daggett still is entitled to qualified immunity because probable cause existed for the arrest.  In a "Fourth Amendment false arrest claim, the relevant inquiry is whether the officers had probable cause to arrest."  <u>Smithson v. Aldrich</u>, 235 F.3d 1058, 1062 (8th Cir. 2000).  "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause."  <u>Habiger v. City of Fargo</u>, 80 F.3d 289, 295 (8th Cir. 1996) (citation omitted).  Thus, "officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so–provided that the mistake is objectively reasonable."  <u>Smithson</u>, 235 F.3d at 1062.  The court agrees that Schmidt has not presented evidence of a Fourth Amendment violation based on her alleged arrest by Sheriff Daggett. Schmidt was arrested pursuant to a tribal court order signed by Judge Cook. The order authorized the immediate removal of Schmidt, a trespasser, and permitted the OSTDPS to turn Schmidt over to federal or state law

enforcement.  The order also indicated a prior "Order of Eviction and Notice to Quit Immediately" had been served on Schmidt, that Schmidt had refused to vacate, and that Schmidt had made threats to public safety and tribal members.  Based on the foregoing, the court concludes Sheriff Daggett had probable cause to arrest Schmidt.  And if probable cause did not exist, at the very least, the information available to Sheriff Daggett provided "arguable probable cause" to arrest Schmidt.  Accordingly, Schmidt is unable to show a constitutional violation, the first prong of the qualified immunity analysis.  Sheriff Daggett is entitled to qualified immunity on Schmidt's claim against him based on her arrest.

Additionally, defendants contend that although Schmidt has claimed the handcuffs hurt her wrists and the seat belt was "biting into her arms," she has not specifically claimed Sheriff Daggett used excessive force, that his actions constituted cruel or improper punishment, or that application of the handcuffs or seatbelt caused an injury.  Under Eighth Circuit precedent, "for the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries." Crumley v. City of St. Paul, Minn., 324 F.3d 1003, 1008 (8th Cir. 2003).  Schmidt has presented no evidence of any injury that resulted from application of the handcuffs or seatbelt.  Thus, Schmidt has not alleged a constitutional violation by Sheriff Daggett, and

Sheriff Daggett is entitled to qualified immunity on any potential excessive force claim by Schmidt.

### b.   Due Process

As defendants note, Schmidt makes numerous allegations that her Fifth and Fourteenth Amendment due process rights were violated.  Defendants speculate that Schmidt apparently believes she was deprived of liberty without due process.  After review of the amended complaint, the court agrees, and will construe the vague due process allegations as a deprivation-of-liberty claim.

"The Fourteenth Amendment guarantees '[s]ubstantive due process[, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.' " Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002) (en banc) (quoting Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)).  A plaintiff presenting a substantive due process claim must show "that the government action complained of is 'truly irrational', that is, 'something more than . . . arbitrary, capricious, or in violation of state law.' " Anderson v. Douglas County, 4 F.3d 574, 577 (8th Cir. 1993) (quoting Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992)).

The alleged actions by defendants in this case are *less* than "arbitrary, capricious, or in violation of state law." See id.  Nothing in the record

indicates behavior by defendants that shocks the conscience or could be considered in any way irrational.  Even if Sheriff Daggett arrested Schmidt, such actions would have been taken pursuant to a tribal court order.  Sheriff Daggett then transported Schmidt to the Fall River County jail.  At the jail, over which Sheriff Tarrell has authority, Schmidt was detained for less than two days before she was released on bond.  Russell reviewed the matter and decided not to prosecute Schmidt.  Schmidt has not shown that she was entitled to be released during that two-day time period or that she was otherwise unlawfully detained.  Schmidt has not presented evidence or even argument that would allow the court the classify any of these actions as "conscience-shocking."

Additionally, Schmidt alleges that she is diabetic and did not receive the proper food or her medication.  As a pretrial detainee, Schmidt was entitled to at least as much protection as that given convicted prisoners.  Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006).  Under the applicable "deliberate indifference" standard, "an official is deliberately indifferent (reckless) if he disregards a known risk to a prisoner's health."  Id. (quoting Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000)).  To show a constitutional violation, "a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it."  Id.  Schmidt has not shown

24

that Russell or Sheriff Daggett had any involvement in her care at the Fall River County jail.  Nor has Schmidt shown Sheriff Tarrell knew about her diabetes or deliberately disregarded a known health risk.  Thus, Schmidt has failed to allege that a constitutional violation occurred at all.  Accordingly, defendants are entitled to qualified immunity on all Schmidt's due process claims against them.

### c.   First Amendment

The only allegation in the complaint regarding the First Amendment is against Judge Cook.  (Docket 10 ¶ 194).  As to defendants, Schmidt has not presented evidence of a constitutional violation based on the First Amendment.  Because no claim is made against defendants and Schmidt has provided no evidence that they violated her First Amendment rights, defendants are entitled to qualified immunity on any possible claim thereunder.

### d.   Malicious Prosecution

In Count 5 of the amended complaint, Schmidt claims a violation of § 1983 in the form of malicious prosecution.  (Docket 10 ¶¶ 199-204).  In the Eighth Circuit, "[t]he general rule is that an action for malicious prosecution does not state a claim of constitutional injury."  Technical Ordnance, Inc. v. United States, 244 F.3d 641, 650 (8th Cir. 2001).  In other words, a § 1983

claim for malicious prosecution may survive only if defendants' actions also infringe on some provision of the constitution or federal law.  Id.  Schmidt's claim in this case does not allege a constitutional injury based on malicious prosecution; in fact, Count 5 does not even allege a prosecution, let alone a malicious one, and the evidence before the court indicates defendants did not prosecute her.  Defendants are entitled to qualified immunity on this claim.

### e.  Conspiracy

Count 3 of Schmidt's amended complaint is entitled "Violations of 42 U.S.C. 1983: Conspiracy."  (Docket 10 ¶¶ 190-91).  Schmidt seeks a "judgment for conspiracy against all the Defendants."  The Eighth Circuit, citing various other circuit courts of appeals and other authority, has ruled that § 1983 can support a charge of civil conspiracy.  Simpson v. Weeks, 570 F.2d 240, 242-43 (8th Cir. 1978).  "However, 'it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself.' "  Putman v. Gerloff, 701 F.2d 63, 65 (8th Cir. 1983) (quoting Simpson, 570 F.2d at 242).  To prove a § 1983 conspiracy claim, Schmidt must show that a defendant conspired with others to deprive her of a constitutional right, that at least one alleged co-conspirator committed an overt act in furtherance of the conspiracy, and that the act injured her.  Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999).  Also, in order to prevail, Schmidt must prove she was deprived of a

26

constitutional right or privilege.  Id.  Schmidt has not presented evidence that she was deprived of a constitutional right, that any defendants conspired to so deprive her, that any defendants engaged in an overt act in furtherance of the conspiracy, or that she was injured.  Therefore, defendants are entitled to summary judgment on the § 1983 conspiracy claim.

### C.    Claims under 42 U.S.C. §§ 1985, 1986

As defendants note in their brief (Docket 158 at 19), the amended complaint could possibly be an attempt to assert violations of 42 U.S.C. §§ 1985 and 1986.  Although they do not believe that Schmidt properly asserted violations of these statutes, defendants address potential claims thereunder to show the futility of such claims.  "Purposeful discrimination must be established for a party to succeed on a § 1985(3) claim."  Jensen v. Henderson, 315 F.3d 854, 862 (8th Cir. 2002).  Another element of a § 1985(3) claim is proof that a conspiracy existed with the purpose of depriving others of equal protection of the law or equal privileges and immunities under the law.  Larson by Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996).  Conclusory allegations are not sufficient, and evidence of purposeful discrimination must be produced to avoid dismissal of a § 1985(3) claim.  See Jensen, 315 F.3d at 863; Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 570 (8th Cir. 2000) (affirming dismissal of plaintiff's claim after concluding plaintiff had not

27

produced evidence of purposeful discrimination and made only conclusory allegations regarding conspiracy claim).

Assuming Schmidt's amended complaint even presents a claim under § 1985(3) (it does not do so explicitly), she has presented, at most, conclusory statements alleging purposeful discrimination by defendants.  Schmidt also has not presented evidence of a conspiracy to deprive her of equal protection, privileges, or immunities under the law.  Thus, she has failed to meet two elements of a § 1985(3) claim.  Further, "because recovery under section 1986 is dependent on the existence of a claim under section 1985," McIntosh v. Ark. Republican Party–Frank White Election Comm., 766 F.2d 337, 340 (8th Cir. 1985), any purported claim Schmidt may have brought under § 1986 also must be denied.  Defendants are entitled to summary judgment on the claims under §§ 1985 and 1986.

**D.    State-Law Claims**

Some language in the amended complaint might indicate an attempt to raise state-law tort claims.  (Docket 10 ¶ 176).  Defendants assert Schmidt did not provide notice of her tort claims as required by SDCL 3-21-2 and 3-21-3. Section 3-21-2 provides that no action for recovery of damages for personal injury or property damage may be maintained against a public entity or its employees unless written notice of the injury is given to the public entity

28

within 180 days after the injury.  Substantial compliance is sufficient to fulfill the notice requirement.  Myears v. Charles Mix County, 566 N.W.2d 470, 474 (S.D. 1997).  Schmidt has produced no evidence that she complied, or substantially complied, with the notice requirement contained in SDCL 3-21-2.  Thus, defendants are entitled to summary judgment on the state-law tort claims.

### III.    Motion for Joinder

Schmidt has filed a Motion for Joinder.  An entry on the court docket sheet following the motion indicates the motion was improperly filed in the instant case rather than in case number CIV. 06-5034.  Because the docket shows the motion was improperly filed, the court will deny the motion as moot.  Based on the foregoing, it is hereby

ORDERED that defendants' motion for summary judgment (Docket 157) is granted.

IT IS FURTHER ORDERED that Schmidt's "Motion for Joinder" (Docket 177) is denied as moot.

Dated March 20, 2007.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

29